26 C.C.P.A.(Patents)
### PENNZOIL CO. v. HERCULES POWDER CO.
**Patent Appeal No. 4039.**

Court of Customs and Patent Appeals.
Dec. 27, 1938.

John S. Powers, of Buffalo, N. Y. (Joseph W. Milburn, of Washington, D. C., of counsel), for appellant.

Edward B. Beale, of Washington, D. C. (John A. Graves, of Wilmington, Del., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences dismissing appellant's notice of opposition, and holding appellee entitled to the registration of its trade-mark "Dipensol," for use on a terpene hydrocarbon solvent.

In its application, serial No. 365,941, filed June 8, 1935, appellee stated that its terpene hydrocarbon solvent was "for use in all processes and compounds using turpentine, such as paints, varnishes, enamels, protective coatings, rubber processing, and cleaning compounds, etc."

Appellee's product, which is procured by the fractional distillation of pine wood, is a mixture of terpinene and terpinolene, and contains a small amount of dipentene and traces of pinene. It is very similar to turpentine in its solvent properties, and is used, to a considerable extent, as a substitute therefor. It is used in the formulation of paints, but, as stated by the witness Langmeier, Director of Sales, Naval Stores Department of the appellee company, "only in small quantities to accomplish a specific result which is not accomplished by turpentine or by petroleum thinners." Its chief use, however, is in the reclaiming of rubber and in the formulation of varnishes. Its use in the rubber reclaiming industry is that of a "devulcanizer," "not a solvent," although it appears that it "could be used to dissolve rubber." It is also used in making protective coatings, such as "lacquers, nitrocellulose lacquers," in cleaning compounds in the nature of a disinfectant, and in compounds for cleaning painted surfaces. It is sold directly to rubber reclaiming industries, paint and varnish manufacturers, and distributors or jobbers in 30 and 55 gallon drums and tank cars. Although it is not sold generally in small quantities at retail, it has been sold as samples in small containers, such as pints, quarts, and gallons. It appears that some of the distributors who handle appellee's product also handle naphtha, produced by petroleum refiners, for use in the paint and varnish industry. It further appears that appellee's product is not available either as a lubricant or as a motor fuel, and, because of its resin forming properties, is not available for use in the dry cleaning industry.

Appellant, The Pennzoil Company of California, is a subsidiary of, and the major portion of its stock is owned by, The Pennzoil Company of Pennsylvania. Appellant is engaged in the marketing of gasoline and lubricating oils and greases produced by the parent company, and is the owner of registration No. 111,759, issued August 1, 1916 on an application filed January 12, 1916 by the Panama Lubricants Company, appellant's predecessor, of the trade-mark "Pennzoil" for use on lubricating oils and greases, and registration No. 248,431, issued Oc-

tober 23, 1928 on an application filed by it April 18, 1928, of a composite trade-mark, comprising a pictorial representation of a bell and the word "Pennzoil" (the word "Pennzoil" being the dominant feature of the mark), for use on motor fuel oils and lubricating oils and greases. Appellant has continuously used its trade-mark on its goods since long prior to any use by appellee of its trade-mark "Dipensol," and, although its sales are restricted to the Pacific Coast states, its trade-mark has been extensively advertised throughout the United States in the Saturday Evening Post and, in other publications, for many years prior to the use by appellee of its trade-mark, and several million dollars have been expended by appellant and the parent company in advertising the "Pennzoil" trade-mark.

The Pennzoil Company of Pennsylvania is engaged in producing and selling petroleum products, such as "gasoline, naphtha, kerosene, lubricating oil, so-called neutral oils, so-called bright stocks, cylinder stocks, scale waxes, petrolatum, fuel oil, [and] gas oil." It has manufactured "thinning" or "V. M. and P. naphtha" for its own use for many years, and has used it in the manufacture of "barrel paint," used by it in reconditioning containers, such as drums, in which some of its products are distributed, and, although it has sold some of this type of naphtha, there is no evidence of record that it is selling it at the present time. It appears that "V. M. and P. naphtha" is listed in trade publications as a solvent, however, the extent of its use as such is not stated in the record. The parent company also manufactures and sells a "cleaning naphtha" for use in cleaning garments, fabrics, linens, etc., which is sold to the public through the company's branches, commonly called "gasoline service stations," under the trade-mark "Pennzoil." The appellant company, however, does not now sell, and never has sold, either "V. M. and P. naphtha" or "cleaning naphtha." In addition to lubricating oils and greases on which it uses its mark "Pennzoil," the appellant company sells gasoline under the trade-mark "Pennzip."

In opposing the registration of appellee's trade-mark, appellant relies here upon the confusion-in-trade clause of section 5 of the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 85. Counsel for appellant contend that the goods of the respective parties possess the same descriptive properties; that appellee's trade-mark "Dipensol" and appellant's trade-mark "Pennzoil" are confusingly similar; that, although appellant does not now sell, and never has sold, either "V. M. and P. naphtha" or "cleaning naphtha," it might in the future in the normal extension of its business engage in the sale of either or both, and that it should not be hampered or embarrassed in the use of its trade-mark "Pennzoil" on such products; that as both "V. M. and P. naphtha" and "cleaning naphtha" are competitive with appellee's product, confusion in trade would result by the concurrent use by the parties of their respective trade-marks; and that as appellant's trade-mark is a valuable one, appellant would be injured by the registration of appellee's mark.

The Examiner of Interferences was of opinion that, although the goods of the respective parties possessed the same descriptive properties, they differed to such an extent that, considering the difference in the respective trade-marks, confusion in trade would not be likely to result from the concurrent use of the marks, and, accordingly, dismissed the notice of opposition.

With reference to the right of appellant to extend its use of its trade-mark to naphtha, the Commissioner, in his decision affirming the decision of the Examiner of Interferences, said:

"As opposer has never applied its mark to any such product, and the possibility of its doing so is purely speculative, I do not think the question of particular importance in the present proceeding. But even if opposer were now dealing in naphtha, that fact would not change my view that confusion is unlikely to result from applicant's use of its mark on the goods described in the application.

"If the two marks 'Pennzoil' and 'Dipensol' were used with identical or closely related merchandise the probability of confusion would be apparent. Or if the marks were identical it is likewise possible that confusion might result from their concurrent use with the goods here involved. But as the marks are different, and the goods are not the same, I am clearly of the opinion that there is no reasonable likelihood that confusion will occur."

It is not seriously argued here by counsel for appellee that the goods of the respective parties do not possess the same descriptive properties. It is argued by counsel, however, that, considering the difference in the goods of the parties and the difference in the involved marks, there is no likelihood of confusion in trade, even though appellant

extends the use of its mark to naphtha, a product which it does not now sell.

It may be, as argued by counsel for appellant, that "V. M. and P. naphtha" may be used as a "rubber solvent" and as a solvent or thinner in the manufacture of paints and varnishes, however, the extent of its use for such purposes does not appear from the record, nor is there anything of record to establish that it is sold at retail. We must assume, therefore, so far as the issues in this case are concerned, that when it is purchased by the "rubber solvent trade" and paint and varnish manufacturers, it is purchased in wholesale quantities either directly from manufacturers thereof or through jobbers or distributors as is appellee's product. That such purchasers are far more discriminating than those of the general public who purchase goods at retail, can not be seriously questioned. In purchasing goods like those here involved, discriminating purchasers would not likely be misled by the concurrent use of the involved trademarks either as to the character or origin of the goods. Accordingly, we are of opinion that purchasers of "V. M. and P. naphtha" would not be confused by the concurrent use by the parties of their trade-marks on their respective goods, assuming that appellant should sometime in the future extend its business to include the sale of "V. M. and P. naphtha" and extend the use of its trade-mark to that product. In this connection, we think it proper to observe that there is nothing of record to indicate that "V. M. and P. naphtha" and appellee's product possess the same character of effectiveness as solvents, or that they are commercially competitive.

With regard to "cleaning naphtha," used in the cleaning of clothing, it clearly appears from the record that appellee's product is not available for such use because of its resin forming properties. Furthermore, we find nothing of record to establish that those products are commercially competitive or that they are used commercially for the same purposes.

The Pennzoil Company of Pennsylvania also produces coating products, referred to in the record as " 'Pennzoil' anti-rust oil, 'Pennzoil' coating oil, 'Pennzoil' No. 3 slushing oil, 'Pennzoil' No. 6 slushing oil, [and] 'Pennzoil' No. 10 slushing oil."

"Pennzoil coating oil" is used for coating steel sheets such as automobile plates, to prevent them from rusting. The "Pennzoil slushing oils" have similar uses. Those products are sold for export to foreign countries, and to steel mills in the United States. The only similarity of use between appellee's product and the coating and slushing oils produced and sold by the Pennzoil Company of Pennsylvania is that appellee's product could be used as a diluent in a compound manufactured for the use to which such coating and slushing oils are put.

We are of opinion, therefore, considering the difference in the marks and the differences in the character and uses of the goods of the respective parties, that the concurrent use of the involved trade-marks would not be likely to cause confusion in trade or result in damage to appellant, even though appellant should sometime in the future extend its business to include the sale of "V. M. and P. naphtha," "cleaning naphtha," and the several coating products produced by its parent company, The Pennzoil Company of Pennsylvania.

The decision is affirmed.

Affirmed.